WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gwendolyn Trembulak,<br><br>            Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner<br>of Social Security,<br><br>            Defendant. | No. CV-12-02420-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title II application for disability insurance benefits.

## I.    PROCEDURAL BACKGROUND

On June 3, 2010, Plaintiff Gwendolyn Trembulak filed a Title II application for a period of disability and disability insurance benefits with the Commissioner of the Social Security Administration ("the Commissioner"), alleging that her disability began on September 1, 2005.  (Administrative Record ("AR") 23).  The Commissioner initially denied Plaintiff's claim on September 22, 2010, and again denied it upon reconsideration on March 16, 2011.  (*Id.*).

Following the denials, on March 22, 2011, Plaintiff filed a written request for a hearing with an Administrative Law Judge ("ALJ").  (*Id.*).  Plaintiff appeared and testified before the ALJ on April 16, 2012.  (*Id.*).  At the hearing, Plaintiff moved to amend the alleged onset date to December 20, 2005; the ALJ granted the motion.  (*Id.*).

On June 20, 2012, the ALJ issued a decision finding that Plaintiff was last insured through June 30, 2009 (hereinafter "the date last insured") and that, during the relevant time period, Plaintiff suffered from five medically determinable impairments: (1) cerebrovascular disease; (2) status post respiratory failure secondary to methicillin-resistant staphylococcus aureus (MRSA) pneumonia; (3) low back pain; (4) hypertension; and (5) depression. (AR 23, 25). However, the ALJ found that Plaintiff did not have a "severe" impairment or combination of impairments because, through the date last insured, Plaintiff's impairments, either individually or in combination, did not significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. (AR 26). Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 29).

Following the ALJ's denial of Plaintiff's claim, Plaintiff requested review of the ALJ's decision with the Appeals Council, Office of Hearings and Appeals, Social Security Administration. (AR 8). On September 13, 2012, the Appeals Council denied Plaintiff's request for review. (AR 1). The Appeals Council adopted the ALJ's decision as the final decision of the Commissioner. (*Id.*).

On November 12, 2012, Plaintiff filed her Complaint with this Court for judicial review of the Commissioner's decision denying her claim, which is the subject of this appeal. (Doc. 1). Plaintiff has filed an opening brief (the "Brief") seeking judicial review of the ALJ's denial of her claim. (Doc. 15). In the Brief, Plaintiff argues that the Court should overturn the ALJ's decision and remand the case with instructions to award benefits because the ALJ's decision contains legal error as it lacks citations to specific and legitimate evidence to support the ALJ's conclusions and because the ALJ's conclusions are not supported by substantial evidence of record. (*Id.* at 2, 22).

## II.   LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). Substantial evidence is more

than a mere scintilla, but less than a preponderance. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted).  In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720.  "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted).  If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).  Additionally, the administrative law judge is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

## A.    Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E).  "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982)).  Disability has "a severity and durational requirement for recognition under the [Social Security] Act that accords with the remedial purpose of the Act." *Flaten v. Sec'y of Health & Human Svcs.*, 44 F.3d 1453, 1459 (9th Cir. 1995).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2012).  A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"A claimant bears the burden of proving that an impairment is disabling."  *Matthews*, 10 F.3d at 680 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)).  Thus, "[t]he applicant must show that [s]he is precluded from engaging in not only h[er] 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment."  *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)).

## B.  Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process).  A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step.  *Reddick,* 157 F.3d at 721.

The five steps are as follows:

1.  First, the ALJ determines whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.

2.  If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* at § 404.1520(c).

Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* at § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. *Id.* at § 404.1520(a) (4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* at § 404.1520(d).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* at § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* at § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* at § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* at § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

In this case, the ALJ found that Plaintiff: (1) had satisfied the first step by not engaging in substantial gainful activity during the period between her amended onset date and her date of last insured (December 20, 2005 through June 30, 2009) (AR 25); but (2) failed to satisfy the second step by failing to show that she suffered from severe

medically determinable impairments[1] during the relevant time (*id.*).  Thus, at step two, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.  (AR 30).

## III.  ANALYSIS

Plaintiff makes four arguments for why the Court should overturn the ALJ's decision.  Specifically, Plaintiff argues that the ALJ committed procedural error by (1) failing to set forth specific and legitimate reasons for rejecting the medical opinion of the treating physician (Doc. 15 at 14–16), (2) failing to set forth specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony (*id.* at 16–20), and (3) failing to set forth reasons germane to Plaintiff's husband for rejecting Mr. Trembulak's testimony as to Plaintiff's symptoms (*id.* at 20–21).  Additionally, Plaintiff argues that the ALJ erred by (4) failing to cite substantial evidence of record to support that Plaintiff does not suffer a "severe" medical impairment or combination of medical impairments.  (*Id.* at 12–14).  The Court will address each of Plaintiff's arguments in turn.

### A.  Whether the ALJ Properly Gave Little Weight to the Medical Opinion of Plaintiff's Treating Physician

#### 1.  Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record.  The Ninth Circuit has held that a treating physician's opinion is usually entitled to "substantial weight."  *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).  A treating physician's opinion is given controlling weight when it is "well-supported by medically

---

[1]  The ALJ found that Plaintiff suffered from five medically determinable impairments: (1) cerebrovascular disease; (2) status post respiratory failure secondary to methicillin-resistant staphylococcus aureus (MRSA) pneumonia; (3) low back pain; (4) hypertension; and (5) depression.  (AR 23, 25).  However, the ALJ further found that these impairments (individually or in combination) were not severe because they did not significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months.  (AR 26).

accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188, at *1 (July 2, 1996).  To determine whether a medical opinion is well-supported "is a judgment that adjudicators must make based on the extent to which the opinion is supported by medically acceptable clinical and laboratory techniques.[2]  SSR 96–2p, 1996 WL 374188, at *2.

The ALJ is not required to accept medical opinions that are conclusory and unsubstantiated by medical documentation.  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).  Even if a treating physician's medical opinion is not well supported, the opinion should not be entirely rejected, but instead it is not entitled to "controlling weight."  SSR 96–2p, 1996 WL 374188, at *4.  When a treating physician's opinion is not well-supported and, as a result, is not given controlling weight, the ALJ applies several other factors to determine the weight given to the treating physician's opinion. These factors include: the length and the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the evidence presented to support the physician's opinion, and whether the physician's opinion is related to his or her specialty.  20 C.F.R. §§ 416.927(c)(2)(i), (c)(2)(ii), (c)(3)-(c)(6).

Moreover,

> Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  [*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended)] (internal quotation marks omitted).  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

---

[2] Examples of laboratory diagnostic techniques are given in 20 C.F.R. § 404.1528 and include, "chemical test, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays) and psychological tests." 20 C.F .R. § 404.1528.

thereof, and making findings. *Magallanes* [*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

*Orn*, 495 F.3d at 632 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998));

*accord Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Lester*, 81 F.3d at 830–31.

## 2.    Discussion

Plaintiff argues that the ALJ rejected the treating physician's (Dr. William's) opinion without setting forth specific and legitimate reasons. (Doc. 15 at 14–16). Specifically, Plaintiff argues that "the only reason proffered by the ALJ for giving the treating physician 'little weight' is alleged 'limited medical records' prior to the date of last insured. (Doc. 15 at 15 (quoting AR 27)). Contrary to Plaintiff's selected quotations from the ALJ's decision, the ALJ actually determined that Dr. William's opinions did not need to be given controlling weight because they were not well-supported by the medical records in evidence:

> On [February 27],[3] 2006, Dr. Williams opined that [Plaintiff] had been incapable of even minimum activity since December 2005 ([AR 302]). Years later, on March 15, 2012, Dr. Williams opined that the claimant had experienced moderate to severe psychiatric limitations since December 2005 ([AR 428–29]). However, *the limited medical records available* from December 20, 2005 through the date last insured *do not support this degree of limitation*. Accordingly, the undersigned gives little weight to these assessments.

(AR 27) (emphasis added).

Initially, the Court notes that both of Dr. William's opinions regarding the severity of Plaintiff's impairments consist of short (one page and two pages, respectively) questionnaires wherein Dr. Williams expressed his medical assessment of Plaintiff by

---

[3] The ALJ's decision erroneously states the date of Dr. William's original opinion as July 20, 2006, but cites to the correct page of the medical records which reflects the actual February 27, 2006 date.

1   checking boxes and answering brief questions.  (AR 302, 428–29).  Conclusory opinions

2   "in the form of a check-list" lack "substantive medical findings" and, as a result, do not

3   provide objective medical evidence to support the treating physician's conclusion.  *See*

4   *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding the

5   ALJ properly gave minimal weight to treating physician's opinion partly because it was

6   unsupported by objective medical evidence).  The remainder of Dr. Williams' records

7   consists of copies of Dr. Williams' medical notes taken during Plaintiff's office visits.

8   These records do not support Dr. Williams' opinions as indicated in the questionnaires in

9   the record.[4]   As a result, there was substantial evidence to support the ALJ's

10  determination that Dr. Williams' opinions were not supported by objective medical

11  evidence.

12

_____

13      [4] *See* AR 307–08 (1/30/06 (less than one month post-hospitalization), noting that
    Plaintiff is "seeing a psychiatrist [and] neurologist," reports memory loss and
14  "significant" depression, and will "talk to psych and neuro about SSI" (presumably an
    abbreviation for Social Security Insurance)); AR 305–06 (2/13/06, "complains of flu-like
15  symptoms," and no impairments referenced or noted); AR 303–04 (2/27/06, noting
    psychiatric "delusions" and "hallucinations," but specifically noting that they occurred
16  during Plaintiff's earlier hospital stay (as opposed to occurring on an ongoing basis); "leg
    pain about the same, seen by Dr. Rhinehart; . . . reviewed to . . . psych; reviewed chart,
17  depressed back to 3/1/06 [sic?]; needs disability papers filled out and in by 3/10/06, doing
    today, need copies"); AR 300–01 (5/18/06, "feels . . . a little better, but does awful when
18  upset; not getting disability from S.S. yet, did get short-term from Lowe's"); AR 298–99
    (7/20/06, noting "normal" psych functions; "doing housecleaning; taking care of kids");
19  AR 296–97 (9/27/06, Plaintiff complaining only of recurrent surface skin condition and
    gastro-intestinal issues); AR 294–95 (11/01/06, "good days and bad, more bad days
20  lately; lots of headaches; chest pain"); AR 292–93 (12/19/06, "exposed to grandchild,
    fever x3 days; back pain; sinusitis; bronchitis"); AR 290–91 ("got really sick last week—
21  still spiking fevers at night; daughter was mean—stole [illegible] car; marital strife;
    chronic back pain; depression/marital strife"); AR 288–89 (2/15/07, "fever/chills/ear
22  ache/congestion mostly in head; teeth rotting/falling out on soft diet; sinusitis now
    resolved"); AR 286–87 (3/29/07, "is decreasing tobacco by using chewing (bubble gum);
23  husband and her have come to argument; chronic [lower back pain]; cognitive deficits;
    needs letter can't work); AR 284–85 (4/24/07, back pain started "on way back from
24  California; feeling like UTI"); AR 282–83 (6/26/07, "mom just had knee replacement;
    travelling back and forth to California"); AR 280–81 (7/19/07, "swollen/sore . . . side of
25  mouth—had several teeth extracted; stomach upset"); AR 278–79 (8/16/07, "lots of tooth
    pain; bruising on face from surgery; facial pain"); AR 276–77 (9/13/07, "2-3 days since
26  return from California, 2 other people sick at home as well, dizzy hands shaky, ache all
    over"); AR 272–74 (1/17/08, "late EFF-cerebrovasc disease, cognitive deficits back pain-
27  lumbar, lumbago," but no mention of severity or effect on Plaintiff); AR 270–71
    (4/07/08, no assessment, but reports subjective "runny nose . . . back pain flared last
28  month on etodalac, stopped it and went back on diclofenac, back pain really improved . . .
    is applying for SS disability, meeting some roadblocks, just wants refills today").

- 9 -

1    Nonetheless, the ALJ continued (AR 27–29) with several paragraphs setting forth
2    specific and detailed inconsistencies and discrepancies between Dr. Williams' extreme
3    opinions[5] and the medical evidence in record with regard to each of the five medically
4    determinable impairments.  First, the ALJ explained that the "[m]edical records from that
5    time repeatedly indicate that [Plaintiff]'s hypertension was well controlled on medication
6    ([AR 279–90])."  (AR 27).  Second, the ALJ reviewed Plaintiff's lower back pain and
7    determined that there is "no evidence that healthcare providers have recommended
8    surgery or anything other than conservative treatments for [Plaintiff]'s lower back pain"
9    (AR 27–28); that Plaintiff reported to Dr. William's "that she was traveling back and
10   forth from Arizona to California" to render assistance to her ailing mother," but did not
11   report experiencing exacerbations in pain (AR 28 (citing AR 282)); and that "the ability
12   to render assistance to her mother is inconsistent with her allegation of [disabling back-
13   pain] during the same period" (AR 28).

14       Third and fourth, with regard to cognitive deficits and memory loss related to
15   cerebrovascular disease and status post respiratory failure secondary to methicillin-
16   resistant staphylococcus aureus (MRSA) pneumonia, the ALJ noted that the medical
17   records did, indeed, "document [Plaintiff]'s reports of cognitive deficits and memory
18   loss[6] ([272–304])."  (AR 28).  However, the ALJ also noted that this documentation
19   reflects only Plaintiff's reported complaints and "do[es] not detail any specific cognitive
20   deficits [Dr. Williams] noted."  (AR 28).  Dr. William's restatements of Plaintiff's
21   subjective complaints are not enough to support finding a severe impairment.  *Ukolov v.*

22   _____

23   [5] On February 27, 2006, Dr. Williams checked the boxes of a questionnaire
     indicating that since Plaintiff's December 2005 hospitalization, she had suffered from the
24   most-severe physical and mental impairments such that she was "incapable of minimum
     activity" and had significantly lost "psychological, personal, and social adjustment."  (AR
25   302).  On March 15, 2012, Dr. Williams checked the boxes of a questionnaire indicating
     that since Plaintiff's December 2005 hospitalization, she had suffered from nearly the
26   most-severe physical and mental impairments to such a degree that during an 8-hour
     workday, she can sit, stand or walk less than two hours, lift and carry less than ten
27   pounds, and must lie down for 20 hours a day due to fatigue and pain.  (AR 428–29, 32–
     33).

28   [6] "For example, in July 2006, [Plaintiff] reported that she wrote notes for herself to
     help her remember things ([AR 298])."  (AR 28).

*Barnhart*, 420 F.3d 1002, 1005–06 (9th Cir. 2005) (establishing the existence of a medically determinable impairment requires both objective medical evidence and subjective symptoms; a treating physician's restatements of a patient's own "perception or description" of her problems, alone, are insufficient).  Further, the ALJ noted that the medical records contain no objective medical evidence supporting Dr. Williams' restatements of Plaintiff's subjective complaints: "[t]here is no evidence that [Plaintiff] had undergone psychiatric or neurological testing to assess her cognitive deficits status post respiratory failure."  (AR 28).  Indeed, as the ALJ noted, the only objective medical examinations[7] that Plaintiff underwent during the relevant time period occurred in January 2006 and Dr. Sciara (Plaintiff's discharging physician during her hospitalization) determined that Plaintiff's "confusion status post respiratory failure . . . was related to the steroid medication she took during her hospitalization rather than an underlying medical condition."  (AR 28 (citing AR 379)).  Lastly, the ALJ observed that the severity of Plaintiff's memory and cognitive deficits opined by Dr. Williams is inconsistent with Plaintiff's testimony that she twice travelled to California to care for her mother and cared for her three young grandchildren, "activities which require good cognitive function and memory."  (AR 28).

Fifth, with regard to depression, the ALJ acknowledged that "Dr. Williams treated [Plaintiff's] depression with medication, and he advised [Plaintiff] to seek counseling." (AR 28 (citing AR 279, 301)).  However, the ALJ also notes that there is no evidence in the record suggesting that Plaintiff "had received or sought counseling or any other specialized mental health services."  (AR 28).  Indeed, during an office visit, Dr. Williams noted that Plaintiff had admitted that she had not sought counseling despite his referral to "value options."  (AR 298).  The ALJ contrasted this lack of evidence with Plaintiff's testimony "that she was capable of a variety of activities from December 20, 2005 through the date of last insured," including two long trips to California to care for

---

[7] Dr. Sciara's January 4, 2006 hospital discharge summary states that Plaintiff "was seen by psychiatry and neurology.  She had an MRI and CT of head, and an EEG, which were all negative for medical causes of confusion."  (AR 379).

1    her mother and caring for her three young grandchildren.  (AR 28).

2         As a result, the Court finds that there is substantial evidence in the record to

3    support the ALJ's determination that Dr. Williams' opinion was not well-supported by

4    objective medical evidence.  Accordingly, the ALJ did not commit legal error by giving

5    Dr. Williams' opinions "little weight" rather than controlling weight.

6         Additionally (and alternatively), Plaintiff appears to argue that the ALJ, in fact,

7    rejected Dr. Williams' opinions rather than merely giving them "little weight."  (Doc. 15

8    at 15 ("At a minimum, the ALJ was required to set forth specific and legitimate reasons

9    for rejecting the opinion of Dr. Williams, which she did not do.")).  Assuming, *in*

10   *arguendo*, that the ALJ in fact rejected Dr. Williams' opinions, the Court finds that the

11   ALJ did not err.  The ALJ set forth a detailed and thorough summary of the facts and

12   conflicting clinical evidence and stated his interpretation thereof.  (AR 27–29).  Further,

13   the ALJ explained why his interpretations, rather than those of Dr. Williams, were

14   correct.  (*Id.*).  Therefore, the Court finds that the ALJ provided specific and legitimate

15   reasons supported by substantial evidence in record to reject Dr. Williams' check-box

16   assessment.    Further, the Court finds these reasons are clear and convincing.

17   Accordingly, the ALJ did not commit legal error on this issue.

18        **B.        Whether the ALJ Properly Discredited Plaintiff's Symptom Testimony**

19             **1.        Legal Standard**

20        There continues to be debate as to the standard of review applied by a district

21   court when an ALJ rejects a claimant's subjective testimony regarding his symptoms:

22   should the Court require the ALJ to make specific findings supported by the record or to

23   provide clear and convincing reasons to explain his credibility determination?  There is

24   Ninth Circuit Court of Appeals authority supporting either standard.  Previously, this

25   Court, following several recent decisions by panels of the Ninth Circuit Court of

26   Appeals,[8] only required an ALJ to provide clear and convincing reasons to discredit a

27   ──────────────

28        [8] Various panels of the Ninth Circuit Court of Appeals have held that unless there is affirmative evidence of malingering, the ALJ must articulate "clear and convincing"

1    claimant's subjective symptom testimony.  *See, e.g.*, *Johnston v. Astrue*, No. CV-11-
2    8121-PHX-JAT, 2012 WL 3108838, at *9 (D. Ariz. July 31, 2012) (citing *Carmickle v.*
3    *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quoting *Lingenfelter v.*
4    *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  Later, when directly confronted with a
5    choice between requiring an ALJ to support his credibility evaluation with "specific
6    findings supported by the record" or "clear and convincing reasons," this Court held that,
7    "to the extent there is actually any principled distinction between the two standards, the
8    ALJ must make specific findings supported by the record to explain his credibility
9    evaluation."  *Savage v. Astrue*, No. CV-11-02103-PHX-JAT, 2013 WL 551461, at *7 n.1
10   (D. Ariz. Feb. 13, 2013).  In so holding, this Court adopted a well-reasoned opinion of the
11   Central District Court of California, *Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL
12   1899797, at *2 (C.D. Cal. Dec. 19, 2000), to explain and resolve apparent confusion in
13   the Ninth Circuit Court of Appeals' precedent on this issue.  Specifically, in *Bunnell v.*
14   *Sullivan*, sitting *en banc*, the Ninth Circuit Court of Appeals held that an ALJ must
15   "specifically make findings which support [his] conclusion.  These findings, properly
16   supported by the record, must be sufficiently specific to allow a reviewing court to
17   conclude the adjudicator rejected the testimony on permissible grounds and did not
18   arbitrarily discredit a claimant's testimony regarding pain."  947 F.2d 341, 345–46 (9th
19   Cir. 1991) (en banc) (internal citation and quotation omitted).  Reasoning that to the
20   extent there is actually a conflict between the two standards, an *en banc* decision
21   necessarily controls over a panel decision, this Court determined that it must adhere to
22   *Bunnell*'s "specific findings supported by the record" standard.  *See Savage*, 2013 WL
23   551461, at *7 n.1.

24   _____

25   reasons for rejecting subjective complaints.  *See, e.g., Carmickle v. Comm'r, Soc. Sec.*
     *Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036
26   (9th Cir. 2007); *Morgan v. Comm'r Soc. Sec. Admin*, 169 F.3d 595, 599 (9th Cir. 1999);
     *Regennitter v. Comm'r Soc. Sec. Admin*, 166 F.3d 1294, 1296 (9th Cir. 1999); *Reddick v.*
27   *Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Light v. Comm'r Soc. Sec. Admin.*, 119 F.3d
     789, 792 (9th Cir. 1997); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v.*
28   *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th
     Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, upon further reflection, and as this Court alluded to in *Savage*, the choice between the two standards appears to be semantic rather than practical. Literally, "clear and convincing" describes the strength of an ALJ's reasons for making his decision while "specific findings" describes an ALJ's factual conclusions upon review of the evidence in record. Reasons and findings are not synonymous, but it is difficult to envision how a reason could be clear and convincing in the absence of specific findings supported by the record. A reason, however, might consist of more than just specific findings; it might also include qualities such as logic, common sense, and experience. Conversely, it is simple to imagine specific findings supported by the record that are too trivial or arbitrary to constitute a clear and convincing reason. When not trivial or arbitrary, however, specific findings that are supported by the record may crystalize into a clear and convincing reason. Thus, despite some literal difference, in practice, reasons and findings are so intertwined that attempting to detect one while ignoring the other is merely an exercise in semantics.

*Bunnell*, itself, appears to acknowledge the need for a Court to review both the ALJ's findings and reasons: the ALJ's "specific findings supported by the record" must be significant enough that a reviewing court can conclude that the ALJ "did not *arbitrarily* discredit a claimant's testimony regarding pain." 947 F.2d at 346 (emphasis added). By including an evaluation for arbitrariness, *Bunnell* requires the ALJ to provide both specific factual findings supported by the record and reasons. *Bunnell*, however, does not define what standard a court should use to determine the arbitrariness of an ALJ's stated reasons. *See* 947 F.2d at 341. Consequently, subsequent panel decisions of the Ninth Circuit Court of Appeals do not contradict or attempt to overturn *Bunnell* if they merely elaborate on what constitutes a non-arbitrary reason. For that reason, in addition to applying *Bunnell*, this Court will also apply the subsequent cases that elaborate that an ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (emphasis added); *see Smolen v.*

1   *Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) ("the ALJ can reject the claimant's testimony

2   about the severity of her symptoms only by offering specific, clear and convincing

3   reasons for doing so"); *see Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins* and *Smolen*).

4         Accordingly, the following appears to be a fair summary of the standard of review

5   the Court should apply when evaluating an ALJ's credibility evaluation of a claimant's

6   subjective symptom testimony:

7         An ALJ must engage in a two-step analysis to determine whether a claimant's

8   testimony regarding subjective pain or symptoms is credible.  *Lingenfelter*, 504 F.3d at

9   1035–36.  First, as a threshold matter, "the ALJ must determine whether the claimant has

10  presented objective medical evidence of an underlying impairment 'which could

11  reasonably be expected to produce the pain or other symptoms alleged.' "  *Id.* at 1036

12  (quoting *Bunnell*, 947 F.2d at 344).  The claimant is not required to show objective

13  medical evidence of the pain itself or of a causal relationship between the impairment and

14  the symptom.  *Smolen*, 80 F.3d 1273, 1282 (9th Cir. 1996).  Instead, the claimant must

15  only show that an objectively verifiable impairment "could reasonably be expected" to

16  produce the claimed pain.  *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at

17  1282); *see also* SSR 96–7p at 2; *Carmickle*, 533 F.3d at 1160–61 ("reasonable inference,

18  not a medically proven phenomenon").  If the claimant fails this threshold test, then the

19  ALJ may reject the claimant's subjective complaints.  *See, Smolen*, 80 F.3d at 1281

20  (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d

21  341))

22        Second, if the claimant meets the first test, then the ALJ " 'may not discredit a

23  claimant's testimony of pain and deny disability benefits solely because the degree of

24  pain alleged by the claimant is not supported by objective medical evidence.' "  *Orteza v.*

25  *Shalala,* 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47).

26  Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence

27  thereof," the ALJ may only find the claimant not credible by making specific findings

28  supported by the record that provide clear and convincing reasons to explain his

1    credibility evaluation.  *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283–84

2    ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is

3    malingering, the ALJ may reject the claimant's testimony regarding the severity of her

4    symptoms only if he makes specific findings stating clear and convincing reasons for

5    doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no

6    evidence of malingering, then the ALJ may reject the claimant's testimony "only by

7    offering specific, clear and convincing reasons for doing so").

8                        **2.      Discussion**

9            Plaintiff argues (Doc. 15 at 16–20) that the ALJ erred in finding that claimant's

10   subjective complaints about her pain were not fully credible.   Specifically, Plaintiff

11   argues that the ALJ's credibility analysis is "minimal," "circular," and does not set forth

12   "specific, clear and convincing reasons."  (*Id.* at 16–17 (quoting *Smolen*, 80 F.3d at

13   1282)).  Plaintiff further argues that the ALJ did "not explain how the medical evidence is

14   inconsistent with reported limitations of pain, fatigue, and memory impairment."  (Doc.

15   15 at 17).  Plaintiff also argues that, upon reviewing the ALJ's written decision, the Court

16   can "not know if, or why, the ALJ rejected Plaintiff's testimony regarding her fatigue,

17   chest pain, dizziness, headaches, shortness of breath, and need to rest and take naps.  (*Id.*

18   at 18).

19           Initially, the Court notes that there appears to be some confusion as to which of

20   Plaintiff's subjective symptoms the ALJ was required to consider.  The ALJ is required to

21   consider only where "the claimant's medically determinable impairments could have

22   been reasonably expected to produce the alleged symptoms."  *Lingenfelter*, 504 F.3d at

23   1035–36.   Here, the ALJ initially found that Plaintiff suffered from five medically

24   determinable impairments: (1) cerebrovascular disease; (2) status post respiratory failure

25   secondary to methicillin-resistant staphylococcus aureus (MRSA) pneumonia; (3) low

26   back pain; (4) hypertension; and (5) depression.  (AR 23, 25).  Therefore, the ALJ was

27   not required to consider (or evaluate the credibility of) Plaintiff's subjective symptom

28   testimony related to various other impairments (such as generalized "cognitive

dysfunction").[9]  Consequently, to the extent that Plaintiff relies on subjective symptom testimony not related to the five medically-determinable impairments found by the ALJ (see Doc. 15 at 16–20), Plaintiff's reliance is misplaced.

Here, at the second step of the analysis, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning.  (AR 27); *see Lingenfelter*, 504 F.3d at 1036.  In performing this second step, the ALJ evaluated Plaintiff's credibility wherever Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not substantiated by objective medical evidence.  (*Id.*).  After apparently finding no affirmative evidence of malingering, the ALJ concluded that, when considering the entire case record, Plaintiff's subjective complaints were not credible to the extent her statements claimed that she suffered from a severe impairment or combination of impairments.  (*Id.*).

While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001); *Fair*, 885 F.2d 597, 602 (9th Cir. 1989), the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible.  *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003).  Factors that the adjudicator may consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities.  *Bunnell*, 947

---

[9] The ALJ also explicitly noted that some of Plaintiff's subjective symptom testimony pertained to "recent worsening lower back pain and depression . . . constipation, irritable bowel syndrome, and frequent headaches.  However, these developments occurred subsequent to June 30, 2009, the date last insured.  Therefore, such developments are not material to [Plaintiff's] Title II claim for disability benefits." (AR 29).

F.2d 341, 346 (9th Cir. 1991) (en banc) (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)).  "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750 (quoting *Bunnell*, 947 F.2d at 345-46 and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

"[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Id.* (citing *Fair*, 885 F.2d at 603.  "An adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." *Id.* (internal citation omitted).  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Id.*

In this case, the ALJ relied not only on the objective medical evidence in finding that Plaintiff's subjective complaints were not fully credible, he also relied on Plaintiff's daily activities and inconsistencies in Plaintiff's testimony.  With regard to Plaintiff's hypertension, Plaintiff has not articulated what, if any, of her subjective symptom testimony the ALJ failed to attribute to her hypertension.  Moreover, the ALJ specifically explained that the "[m]edical records from that time repeatedly indicate that [Plaintiff]'s hypertension was well controlled on medication ([AR 279–90])." (AR 27).

With regard to Plaintiff's lower back pain, the ALJ found that the objective medical evidence provided "no evidence that healthcare providers have recommended surgery or anything other than conservative treatments for [Plaintiff]'s lower back pain." (AR 27–28).  Plaintiff argues that "simply because [Plaintiff's] symptoms are not amenable to surgical treatment, does not mean she is a non-credible individual." (Doc. 15 at 19).  This argument, however, misses the point.  Here, the ALJ is merely commenting on the lack of objective medical evidence, such as recommending more

serious treatments (or x-rays, MRIs, etc.), to corroborate Plaintiff's subjective complaints of lower back pain.  Additionally, the ALJ noted that despite Plaintiff's claim that lower back pain caused her severe limitations, [10] she twice traveled from Arizona to California to care for her ailing mother without contemporaneously reporting exacerbated pain or limitations.  (AR 28).  Further, the ALJ contrasted Plaintiff's claimed limitations with her self-reported ability to care for her ailing mother (for multiple months) as her mother recovered from knee surgery.  (*Id.*).

With regard to Plaintiff's depression, the ALJ noted that there was no objective medical evidence of depression, aside from Dr. Williams' prescriptions of medication and advice that Plaintiff seek counseling.  (*Id.*).  Despite Dr. William's advice, the ALJ found there was "no evidence that [Plaintiff] had received or sought counseling or any other mental health services."  (*Id.*).  Moreover, the ALJ specifically contrasted Plaintiff's claimed limitations (such as memory-loss cognitive deficits, and confusion) with her and her husband's reports of her daily activities that the ALJ found require good cognitive function and memory: taking care of her three grandchildren, performing numerous household tasks, and caring for her ailing grandmother.  (AR 28–29).

With regard to cerebrovascular disease and status post respiratory failure, Plaintiff's subjective symptom testimony appears to allege various cognitive deficits.  (*See* Doc. 25 at 3–4).  The ALJ specifically explained, however, that the objective medical evidence in the record demonstrated that Plaintiff's "confusion status post respiratory failure" was "related to the steroid medication she took during her hospitalization rather than an underlying medical condition" (and thus was temporary).  (AR 28).  Moreover, the ALJ noted that Plaintiff's treating physician, Dr. Williams, did not note any specific cognitive deficits but rather only Plaintiff's reported complaints.  (*Id.*).  Nonetheless, Plaintiff contends that the objective medical evidence supports her

---

[10] Plaintiff testified that during the relevant time period, her back pain was so severe that she could not stand for more than 20 minutes, sit for more than one hour, or lift more than a gallon of milk.  (AR 27).  Additionally, Plaintiff claimed to require three to four hours of naps per day.  (*Id.*).

- 19 -

subjective symptom testimony because EEG evidence demonstrates "diffuse cerebral disturbance." (Doc. 15 at 13 (referring to a December 30, 2005 EEG taken during her hospital admission, AR 384)). As the ALJ alluded to (AR 28), however, later neurological testing was normal (AR 379) and the hospital doctors concluded that any confusion was caused by Plaintiff's current course of steroids, not an underlying medical condition. (AR 379). Moreover, the ALJ specifically contrasted Plaintiff's claimed limitations (such as memory-loss, cognitive deficits, and confusion) with her and her husband's reports of her daily activities that the ALJ found require good cognitive function and memory: taking care of her three grandchildren, performing numerous household tasks, and caring for her ailing grandmother. (AR 28–29).

Further, in accordance with the factors to consider under SSR 88–13, the ALJ generally considered evidence of daily activities. (AR 28–29). Such consideration is not improper. *See Fair,* 885 F.2d at 603 ("More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"). The ALJ took into account Plaintiff's daily activities of bathing her grandchildren, taking them to school and generally caring for them, preparing meals, mopping, washing clothes, shopping for groceries, travelling independently, and driving a car in determining that Plaintiff's subjective complaints were not fully credible. (AR. 28–29). Moreover, the ALJ specifically noted that because these admissions related to Plaintiff's current state and Plaintiff has reported worsening subjective symptoms, "it is likely that she was at least this functional if not more so from December 20, 2005 through [June 30, 2009]". (AR 29).

In sum, the ALJ relied on several factors when determining that Plaintiff could perform certain work, including contradictory or inconsistent objective medical evidence, Plaintiff's daily activities, and inconsistencies in Plaintiff's testimony.

Based on foregoing, the ALJ's credibility finding was a "reasonable

interpretation" of the evidence.  Moreover, the ALJ made specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. Consequently, "it is not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).  Accordingly, the ALJ did not err in discounting Plaintiff's subjective complaints.

### C.   Whether the ALJ Properly Discredited Mr. Trembulak's Testimony as to Plaintiff's Symptoms

#### 1.   Legal Standard

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's inability to work.  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)); *see also* 20 C.F.R. § 404.1513(d).  An ALJ cannot disregard lay witness testimony without comment, *Bruce*, 557 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so only upon providing specific reasons that are "germane to each witness."  *Id.* (quoting *Nyugen*, 100 F.3d at 1467); *Stout*, 454 F.3d at 1054.  When an ALJ errs in failing "to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout*, 454 F.3d at 1056.

#### 2.   Discussion

Plaintiff argues that her husband, Mr. Trembulak, provided competent evidence (a third-party function report form (AR 216–23)) of Plaintiff's symptoms and their impairing effects, but that the ALJ rejected the report "with general findings."  (Doc. 15 at 20–21).  In fact, the ALJ provided specific and germane reasons for not "fully credit[ing] the allegations of . . . Mr. Trembulak, to the extent that . . . Mr. Trembulak allege[s] Plaintiff] to have been disabled prior to the date last insured."  (AR 29).  The ALJ explained that Mr. Trembulak's allegations were inconsistent with the medical evidence in record, Plaintiff's limited attempts to seek treatment during the relevant

time,[11] and Plaintiff's admission "that she was able to care for her household and take responsibility for her three grandchildren during that time."   (*Id.*).   Even more specifically, the ALJ explained that although Mr. Trembulak's assessment indicates that Plaintiff "has some memory problems," Mr. Trembulak admits that Plaintiff

> is able to bathe her grandchildren, take them to school, and generally care for them. [Mr. Trembulak] also admit[s] that [Plaintiff] is able to prepare meals, mop, wash clothes, and shop for groceries.   [Mr. Trembulak] further admit[s] that [Plaintiff] is able to travel independently and drive a car. Although these admissions relate to [Plaintiff]'s current mental state, and not the period under consideration, because [Plaintiff] reports increasing mental difficulties over the years ([AR 240]), it is likely that she was at least that functional, if not more so from December 20, 2005 through the date of last insured.

(AR 28–29).  The Court finds that the ALJ's articulated reasons for partially discrediting Mr. Trembulak's report are both specific and germane to Mr. Trembulak's report. Accordingly, the ALJ did not commit legal error on this issue.

      **D.**      **Whether Substantial Evidence of Record Supports the ALJ's Conclusion that Plaintiff did not have Severe Impairments**

Plaintiff appears to argue that the ALJ erred at Step Two in finding that Plaintiff's depression and cognitive deficits were not severe.  (*See* Doc. 15 at 12–14).  Rather than articulate the ALJ's alleged error with any specificity, Plaintiff generically claims that the ALJ failed to cite substantial evidence of record to support the ALJ's findings.  (*Id.*).

As discussed above, the ALJ's conclusion that Plaintiff's medically determinable *physical* impairments[12] were not severe is supported by substantial evidence.   With regard to Plaintiff's depression and alleged cognitive deficits[13] (medically determinable *mental* impairments), in addition to the five-step sequential evaluation discussed above,

---

[11] The ALJ reasoned that limited seeking of treatment "suggests that [Plaintiff]'s conditions were not severe enough to compel her to seek regular treatment."  (AR 29).

[12] (1) cerebrovascular disease; (2) status post respiratory failure secondary to methicillin-resistant staphylococcus aureus (MRSA) pneumonia; (3) low back pain; (4) hypertension.  (AR 23, 25).

[13] Plaintiff appears to attribute her cognitive deficits to both depression and cerebrovascular disease status post respiratory failure.

when evaluating the severity of mental impairments for adults, the ALJ is required to assess the functional limitations of the claimant in relation to four broad categories: daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation.  20 CFR § 404.1520a.  When rating the categories of daily living, social functions, and concentration, persistence, or pace, the ALJ is to use a five point scale of none, mild, moderate, marked, and extreme.  *Id.*  When rating decompensation, the ALJ is to use a four point scale of none, one or two, three, or four or more.  *Id.*  After rating the degree of functional limitation, the ALJ determines the severity of the mental impairments.  If the ALJ finds that there are severe mental impairments that do not meet or are equivalent in severity to any listing, the ALJ then assesses the claimant's residual functional capacity.  *Id.*

In this case, the ALJ found that Plaintiff has (1) no limitation in daily living; (2) no limitation in social functioning; (3) mild limitation in concentration persistence or pace, and (4) no episodes of decompensation.  (AR 29).  The ALJ explained the basis for these conclusions with specific reference to Plaintiff's medical records, Plaintiff's testimony, and the testimony of Plaintiff's husband.  (AR 27–29).  The ALJ noted that, with regard to Plaintiff's depression and cognitive deficits, "[t]he medical record providers [sic] little evidence of limitations in these areas of functioning."  (AR 28).  Additionally, the ALJ noted that "[t]here is no evidence that the claimant had undergone psychiatric or neurological testing to assess her cognitive deficits."  (*Id.*).  In her Reply, Plaintiff challenges these assertions and argues that "[c]ognitive loss . . . is supported by medical evidence including encephalopathy, EEG demonstrating diffuse cerebral disturbance, and known side effects of prescribed steroids."  (Doc. 25 at 3–4 (citing AR 381–85, 88–90)).  The medical records Plaintiff cites, however, were created during Plaintiff's December 2005 hospitalization, do not diagnose any long-term cognitive deficits, and verify that the EEG showed no signs of significant cognitive deficits.  (AR 381–85, 88–90).  Moreover, as the ALJ explicitly noted (AR 28), Dr. Sciara's January 4, 2006 hospital discharge summary reviewed Plaintiff's December 2005 hospitalization

records and states that Plaintiff "was seen by psychiatry and neurology.  She had an MRI and CT of [her] head, and an EEG, which were all negative for medical causes of confusion."  (AR 379).  Indeed, at that time, Dr. Sciara determined that Plaintiff's "confusion status post respiratory failure . . . was related to the steroid medication she took during her hospitalization rather than an underlying medical condition."  (AR 379).

The ALJ also relied on medical records related to Plaintiff's treatment under Dr. Williams.  (AR 28–29).[14]  Moreover, the ALJ relied on descriptions of Plaintiff's abilities and limitations provided by Plaintiff and her husband, Mr. Trembulak.  (AR 28–29 (citing AR 216–23, 32–39)).  As a result, the ALJ found that Plaintiff's "depression and cognitive deficits" "cause no more than 'mild' limitation in any of the first three functional area and 'no' episodes of decompensation which have been of extended duration in the fourth area.  (AR 28–29).  Consequently, the ALJ found Plaintiff's alleged mental impairments caused no more than minimal limitations in the Plaintiff's ability to perform basic mental work activities and, therefore, are not severe.  (AR 29).

In sum, the ALJ's conclusion that Plaintiff's depression and alleged cognitive deficits did not cause more than minimal limitations in her ability to perform basic mental work is supported by the record.  (*See* Doc. 19 at 12–16 (citing to evidence in the Record supporting ALJ's determination)); *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012) (finding that, even if ALJ fails to give appropriate reasons for his decision, if the record supports his ultimate conclusion, the ALJ's failure to properly explain that conclusion is harmless error).

Moreover, as discussed above, there is substantial evidence of record supporting the ALJ's decision that Plaintiff is not disabled.  *Batson,* 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from

---

[14]  In her Reply, Plaintiff argues that the medical records demonstrate that "[c]ognitive loss is also related to chronic pain, depression, and right hemiplegia" and that her memory worsens with stress.  (Doc. 25 at 4 (citing AR 292–97, 300–01, 307–08)).  The cited medical records, however, only evidence Plaintiff's own subjective reporting of symptoms (which the ALJ reasonably discredited, as explained above) and do not provide any medical opinion of Dr. Williams.

the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted).

## IV.     CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is AFFIRMED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

Dated this 10th day of February, 2014.

James A. Teilborg
Senior United States District Judge